1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

ANTONIO P. SMITH,

Case No. C19-696-RSL

10

Petitioner,

11

v.

ORDER ON PETITIONER'S
28 U.S.C. § 2255 MOTION
AND RELATED MOTIONS

12

UNITED STATES OF AMERICA,

13

Respondent.

14

15    This matter comes before the Court on (1) petitioner Antonio P. Smith's "Motion Under
16  28 U.S.C. § 2255 to Vacate a Sentence by a Person in Federal Custody" (Dkt. # 1), (2) the
17  government's "Motion to Dismiss Petition" (Dkt. # 9), and (3) Mr. Smith's "Motion to Amend
18  Pending Motion Under 28 U.S.C. § 2255 to Vacate Judgment and Sentence of Petitioner" (Dkt.
19  # 13).[1] Having reviewed the memoranda of the parties and the record contained herein, the
20  Court finds as follows:

21                              **I.      BACKGROUND**

22  **A.    Conviction Under 18 U.S.C. § 922(g)(1)**

23    On January 5, 2018, the government charged Mr. Smith by complaint with one count of
24  Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1). CR18-12-RSL

25

26    [1] The government also filed a "Motion for Extension to Respond to Petition" (Dkt. #7). The
27  Court, finding good cause, GRANTS the government's request for an extension of time until December
    20, 2019. The government filed its motion to dismiss the petition on December 16, 2019, within this
28  timeline. Dkt. # 9. The parties agree that the matter is fully briefed. Dkt. # 25 at 2.

1   Complaint (Dkt. # 4). The complaint alleges that, on or about December 12, 2003, Mr. Smith
2   was convicted in King County Superior Court of burglary in the second degree, a crime the
3   Complaint described as being "punishable by imprisonment for a term exceeding one year." Id.
4   On January 17, 2018, Mr. Smith was indicted by Grand Jury on one count of Felon in
5   Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1). CR18-12-RSL Indictment
6   (Dkt. # 11). The indictment listed the 2003 second degree burglary as the predicate felony
7   offense. Id. On January 30, 2018, Mr. Smith pled guilty to count one of the indictment. CR18-
8   12-RSL Plea Agreement (Dkt. # 19); CR18-12-RSL Order of Acceptance (Dkt. # 23). The plea
9   agreement identifies the elements of the offense as follows: (1) "the defendant knowingly
10  possessed ammunition," (2) "the ammunition was not manufactured in the State of Washington
11  and therefore had traveled in interstate or foreign commerce," and (3) "the defendant previously
12  had been convicted of a crime punishable by a term of imprisonment exceeding one year."
13  CR18-12-RSL Plea Agreement ¶ 2. The plea agreement also recites the 2003 second degree
14  burglary as Mr. Smith's predicate felony offense. Id. ¶ 8.a. On May 11, 2018, the Court
15  sentenced Mr. Smith to time served and three years of supervised release. CR18-12-RSL
16  Judgment (Dkt. # 31).

17  **B.    Supervised Release Violations**

18          On May 21, 2018, Mr. Smith was released from custody to reside in a residential reentry
19  center. CR18-12-RSL Violation Memorandum (Dkt. # 39). On July 10, 2018, Mr. Smith was
20  terminated from the residential reentry center after failing to satisfactorily reside and participate
21  there. Id. He was taken into custody and on September 6, 2018, the Court sentenced him to time
22  served and 24 months of supervised release. CR18-12-RSL Judgment (Dkt. # 52). He returned
23  to the residential reentry center and then faced additional allegations of supervised release
24  violations. See CR18-12-RSL Violation Memorandum (Dkt. # 55).

25  **C.    Charges Under 18 U.S.C. §§ 115(a)(1)(B), (b)(4)**

26          On October 1, 2018, Mr. Smith was arrested and charged by complaint with one count of
27  threatening to murder a federal probation officer in violation of 18 U.S.C. §§ 115(a)(1)(B),
28  (b)(4). CR18-246 Complaint (Dkt. # 1). The Grand Jury returned an indictment on this count on

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 2

October 11, 2018. CR18-246 Indictment (Dkt. # 8). Thereafter, Mr. Smith's counsel notified the Court that it had concerns as to his competency. The Court held a competency hearing on February 22, 2019 and found Mr. Smith to be mentally incompetent. CR18-246 Order for Commitment (Dkt. # 33). The Court ordered that Mr. Smith be immediately transported to initiate competency restoration treatment. CR18-246 Order Granting Defendant's Motion to Seal Motion to Order the Attorney General to Immediately Initiate Competency Restoration Treatment (Dkt. # 39). On September 23, 2019, the Court issued an order extending Mr. Smith's commitment for restoration treatment for an additional 120 days consistent with a recommendation issued by personnel at Federal Medical Center ("FMC") Butner. CR18-246 Order Extending Commitment for Restoration Treatment (Dkt. # 52). On January 21, 2020, FMC Butner personnel issued a report concluding there was not a substantial probability that Mr. Smith's competency could be restored in the foreseeable future. CR18-246 Forensic Evaluation (Dkt. # 54) (the report was filed with the Court on February 7, 2020). The parties indicated that Mr. Smith was returned to the Federal Detention Center ("FDC") SeaTac approximately one month later. CR18-246 Joint Status Report of Parties (Dkt. # 55).

**D.     Petition Under 28 U.S.C.§ 2255 and Subsequent Procedural History**

On May 9, 2019, Mr. Smith filed a 28 U.S.C. § 2255 petition challenging his sentence for the conviction under 18 U.S.C. § 922(g)(1) (CR18-12-RSL). See Dkt. # 1. On May 28, 2019, the government moved to stay its response to Mr. Smith's petition pending the outcome of the Ninth Circuit's decision in United States v. McAdory, 935 F.3d 838 (9th Cir. 2019). Dkt. # 5. The Court granted the motion and stayed the government's deadline to respond to the petition until 14 days from the date of a decision in McAdory.[2] Dkt. # 6. The Ninth Circuit's decision in McAdory became final on November 25, 2019. Mandate, United States v. McAdory, 935 F.3d 838 (9th Cir. 2019) (No. 18-30112) (Dkt. # 75). On December 16, 2019, the government moved to dismiss Mr. Smith's § 2255 petition. Dkt. # 9. The Court held a teleconference on January 23,

___

[2] On December 9, 2019, the government moved for a brief extension of time to respond to Mr. Smith's petition (Dkt. # 7). As described above, the government's motion is GRANTED. See supra n.1.

1    2020, regarding the status of Mr. Smith's competency evaluation and the potential for a global

2    resolution of Mr. Smith's habeas petition and pending criminal matters. Dkt. # 12.

3         On June 22, 2020, Mr. Smith moved to amend his § 2255 petition to add a claim under

4    Rehaif v. United States, 139 S. Ct. 2191 (June 21, 2019). Dkt. # 13. On September 9, 2020, the

5    Court held a status conference on the § 2255 petition and the outstanding criminal matters and

6    granted the parties' request for another status hearing to discuss resolution. Dkt. # 19. The

7    parties filed supplemental briefing regarding the § 2255 petition in September of 2020 regarding

8    the Ninth Circuit's decision in United States v. Asuncion, 974 F.3d 929 (9th Cir. 2020), and the

9    Court held another status conference on December 8, 2020. At that conference, the Court agreed

10   to release defendant on bond to participate in a mental health residential facility, consistent with

11   the parties' recommendation. CR18-246 12/8/20 Minute Entry (Dkt. # 60). The parties' most

12   recent joint status report dated March 15, 2021, recommended that the Court dismiss the threat

13   case (CR18-246-RSL) without prejudice, as well as the pending supervised released violations

14   (CR18-12-RSL), because Mr. Smith is incompetent and unlikely to be restored. Dkt. # 25. On

15   March 19, 2021, the Court concluded that Smith is incompetent and unlikely to be restored to

16   competency in the future and dismissed the supervised release violations and threat case

17   accordingly. CR18-12-RSL 3/19/2020 Minute Entry (Dkt. # 115); CR18-246-RSL 3/19/2020

18   Minute Entry (Dkt. # 63). On that same day, the Court briefly addressed the pending § 2255

19   petition and explained that an Order would issue. This Order reflects the Court's full analysis of

20   Mr. Smith's § 2255 petition (Dkt. # 1), the government's motion to dismiss the petition (Dkt.

21   # 9), and Mr. Smith's motion to amend the petition (Dkt. # 13).

22                        **II.   MOTION TO AMEND (DKT. # 13)**

23        As an initial matter, the Court must determine whether Mr. Smith may add a claim for

24   Rehaif relief to his § 2255 petition. Mr. Smith's motion to amend was filed before adjudication

25   of the initial § 2255 petition had been completed such that the Anti-Terrorism Effective Death

26   Penalty Act's bar on second or successive petitions does not prevent the amendment. Clark v.

27   United States, 764 F.3d 653, 658 (6th Cir. 2014) ("A motion to amend is not a second or

28   successive § 2255 motion when it is filed before the adjudication of the initial § 2255 is

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 4

complete—*i.e.*, before the petitioner has lost on the merits and exhausted her appellate remedies.") (citing <u>Ching v. United States</u>, 298 F.3d 174, 177–78 (2d Cir. 2002) and <u>Johnson v. United States</u>, 196 F.3d 802, 805 (7th Cir. 1999)). The Rules Governing Section 2255 Proceedings for the United States District Courts also do not bar the amendment. <u>See</u> Rules Governing Section 2255 Proceedings for the United States District Courts.

> Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts says that when special collateral-attack rules do not include a special provision for a circumstance, the court should be guided by the Rules of Civil and Criminal Procedure. <u>See</u> 28 U.S.C. § 2255 Rule 12. Because the Rules Governing Section 2255 Proceedings for the United States District Courts do not deal with amendments to motions for collateral review, a motion to amend a § 2255 motion is generally governed by the Federal Rules of Civil Procedure.

<u>Clark</u>, 764 F.3d at 661. Federal Rule of Civil Procedure 15(a)(2) provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Mr. Smith's motion to add a claim for <u>Rehaif</u> relief serves the interest of justice because when he filed his initial motion, the Supreme Court had not yet decided <u>Rehaif</u>. Additionally, the government does not expressly object to Mr. Smith's amendment of the petition,[3] but rather, maintains that he is not entitled to relief under <u>Rehaif</u> on the merits. <u>See</u> Dkt. # 15. Accordingly, the Court GRANTS Mr. Smith's motion to amend his § 2255 petition and will address the merits of the <u>Rehaif</u> claim as part of its analysis of Mr. Smith's petition.

### III.   PETITION UNDER 28 U.S.C. § 2255 (DKTS. # 1, # 9)

Under 28 U.S.C. § 2255, a prisoner in federal custody may move the sentencing court to vacate, set aside, or correct his sentence where "the sentence was imposed in violation of the Constitution or the laws of the United States, or [where] the court was without jurisdiction to impose such a sentence, or [where] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" Mr. Smith initially asserted three "grounds for

---

[3] The government has therefore waived any arguments regarding timeliness of the <u>Rehaif</u> claim. <u>See</u> <u>United States v. Hill</u>, 915 F.3d 669, 673 n.1 (9th Cir. 2019) ("Because the government does not distinctly argue that [the petitioner's] claim is untimely under the one-year statute of limitations in 28 U.S.C. § 2255(f), it has waived this argument and we do not address it.").

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 5

relief": (1) he was not previously convicted of a crime punishable by imprisonment for a term exceeding one year, (2) he received ineffective assistance of counsel because his lawyers failed to raise the issue that Mr. Smith did not have a predicate felony, and (3) he is actually innocent of the crime of felon in possession of ammunition in violation of § 922(g)(1). As discussed above, Mr. Smith amended his petition to add a claim for relief under Rehaif. Ultimately, the Court concludes that Mr. Smith's conviction and sentence must be vacated under Rehaif, and the Court declines to address the other grounds Mr. Smith puts forward.[4] Because certain procedural aspects of Mr. Smith's motion turn on resolution of the motion's merits, the Court will address the merits first.

**A.    Applying Ninth Circuit Precedent to Predicate Offenses Under the Washington Juvenile Sentencing System**

Mr. Smith argues that he is actually innocent of 18 U.S.C. § 922(g)(1) because the crime requires proof of a predicate offense "punishable by imprisonment for a term exceeding one year," and Mr. Smith contends that his predicate offense does not meet this requirement. The government contends that the predicate offense requirement has been met here. Resolution of the parties' dispute hinges on the application of a line of Ninth Circuit cases interpreting what it means for a Washington state crime to be "punishable by imprisonment for a term exceeding one year," including United States v. Valencia-Mendoza, 912 F.3d 1215 (9th Cir. 2019), United States v. McAdory, 935 F.3d 838 (9th Cir. 2019), and United States v. Asuncion, 974 F.3d 929 (9th Cir. 2020). Although the Court finds the reasoning of this line of cases problematic, the Court is bound to follow the Ninth Circuit's rulings on this issue. See Hart v. Massanari, 266 F.3d 1155, 1170 (9th Cir. 2001) ("A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue.").

---

[4] The Court observes that the first "ground for relief" Mr. Smith articulates appears to function more as the basis for understanding Mr. Smith's claims for ineffective assistance of counsel, freestanding actual innocence, and relief under Rehaif, rather than operating as its own independent ground for relief.

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 6

1    First, in Valencia-Mendoza, the Ninth Circuit held that "the top sentence of the

2    guidelines range *was* the maximum possible statutory punishment" under Washington law

3    because Washington statutes prescribe a required sentencing range that binds the sentencing

4    court. Valencia-Mendoza, 912 F.3d at 1223. This decision overruled United States v. Murillo,

5    422 F.3d 1152, 1154 (9th Cir. 2005), a case that had interpreted the maximum sentence to be

6    "the statutory maximum sentence for the offense, not the maximum sentence available in the

7    particular case under the sentencing guidelines." The Valencia-Mendoza decision concerned the

8    adult sentencing system put in place in 2005, after the Supreme Court held that the previous

9    system was unconstitutional. See Asuncion, 974 F.3d at 932 n.2 (citing Blakely v. Washington,

10    542 U.S. 296 (2004)); Final Bill Report SB 5477, 59th Leg. (Wash. 2005). The Ninth Circuit

11    then applied the Valencia-Mendoza holding in McAdory to conclude that "a Washington

12    conviction is only 'punishable by' a year or more of imprisonment for purposes of § 922(g)(1) if

13    the defendant's conviction actually exposed the defendant to that sentence under the state's

14    mandatory sentencing scheme." McAdory, 935 F.3d at 843. Where none of McAdory's prior

15    convictions had sentencing ranges exceeding one year or written findings that would justify an

16    upward departure from the sentencing ranges, the Ninth Circuit determined that no predicate

17    offenses existed within the meaning of § 922(g)(1). Id. at 844. Although McAdory did not

18    explicitly distinguish between the adult and juvenile sentencing systems,[5] two of the three prior

19    convictions at issue were *juvenile* felony convictions. Id. at 841.

20    Following McAdory, the Ninth Circuit decided Asuncion, which concerned

21    Washington's former adult sentencing system, before it was reformed in 2005. Asuncion, 974

22    F.3d at 933. The Ninth Circuit held that offenses sentenced under Washington's former adult

23    sentencing system "would have been punishable by more than one year, because under that

24    system the judge had broad, open-ended discretion to impose a sentence above the guideline

25    range (and thus above a year)." Id. at 932. The Ninth Circuit contrasted the newer adult system

26

27        [5] Although Washington State typically uses the word "disposition" in lieu of "sentencing," in the
juvenile justice context, because this Order concerns comparisons between the adult and juvenile

28    systems, it will use the word "sentencing" to describe both systems.

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 7

1  that was at issue in <u>Valencia-Mendoza</u>, under which courts could impose "above-guideline

2  sentences based on judge-found facts in only four enumerated circumstances," with the previous

3  system, under which the judge's discretion was "far greater" and where the judge could conduct

4  "an open-ended inquiry into any potential factual circumstance." <u>Id.</u> at 932–34; <u>see also</u>

5  <u>Valencia-Mendoza</u>, 912 F.3d at 1218 (citing RCW 9.94A.535(2) (2019)).

6       The government argues that <u>Asuncion</u> "dooms" Mr. Smith's petition because the juvenile

7  sentencing system is more akin to Washington's former adult sentencing system than it is to the

8  newer version. Dkt. # 20 at 2. Mr. Smith, however, argues that the juvenile sentencing system is

9  more similar to the newer adult sentencing system and that <u>McAdory</u> controls the outcome here

10  anyway. The Court concludes that Ninth Circuit precedent compels the conclusion that Mr.

11  Smith's juvenile conviction does not qualify as a predicate offense under § 922(g)(1).

12       Under Washington's juvenile sentencing system, "If the court concludes, and enters

13  reasons for its conclusion, that disposition within the standard range would effectuate a manifest

14  injustice the court shall impose a disposition outside the standard range." RCW 13.40.160(2).

15  The statute defines "manifest injustice" as "a disposition that would either impose an excessive

16  penalty on the juvenile or would impose a serious, and clear danger to society in light of the

17  purposes of this chapter."[6] RCW 13.40.020(19). In <u>State v. B.O.J.</u>, 194 Wn.2d 314 (2019), the

18

19       [6] The purposes of Ch. 13.40 RCW are:

20  (a) Protect the citizenry from criminal behavior; (b) Provide for determining whether
    accused juveniles have committed offenses as defined by this chapter; (c) Make the

21  juvenile offender accountable for his or her criminal behavior; (d) Provide for
    punishment commensurate with the age, crime, and criminal history of the juvenile

22  offender; (e) Provide due process for juveniles alleged to have committed an offense;
    (f) Provide for the rehabilitation and reintegration of offenders; (g) Provide necessary

23  treatment, supervision, and custody for juvenile offenders; (h) Provide for the handling
    of juvenile offenders by communities whenever consistent with public safety; (i) Provide for

24  restitution to victims of crime; (j) Develop effective standards and goals for the operation,
    funding, and evaluation of all components of the juvenile justice system and related

25  services at the state and local levels; (k) Provide for a clear policy to determine what
    types of offenders shall receive punishment, treatment, or both, and to determine the

26  jurisdictional limitations of the courts, institutions, and community services; (l) Provide
    opportunities for victim participation in juvenile justice process, including court hearings

27  on juvenile offender matters, and ensure that Article I, section 35 of the Washington state

28

Washington Supreme Court reviewed a trial court's imposition of a manifest injustice disposition. The trial court imposed the manifest injustice disposition in question because the standard range "would not [have] allow[ed] sufficient time for [B.O.J.] to complete the [substance abuse and mental health treatment] she need[ed], nor would she [have] engage[d] with such services in the community" and it "would [have] be[en] too lenient in light of [B.O.J.'s] uncharged criminal conduct, dismissed charges, and failures to comply with court orders." B.O.J., 194 Wn.2d at 319. The Washington Supreme Court rejected the justification related to the defendant's need for treatment. Id. at 325–28. In so doing, the Washington Supreme Court concluded that not all of the statutorily enumerated purposes would be relevant to the manifest injustice determination.[7] Id. at 324. The Washington Supreme Court narrowly read the "sole basis" for a manifest injustice disposition upward to be "a serious, and clear danger to society." Id. at 328. In contrast to the adult sentencing system at issue in Asuncion, where a judge could conduct "an open-ended inquiry into any potential circumstance," Asuncion, 974 F.3d at 923, the juvenile sentencing system in Washington does not involve such broad discretion.

---

Constitution, the victim bill of rights, is fully observed; and (m) Encourage the parents, guardian, or custodian of the juvenile to actively participate in the juvenile justice process.

RCW 13.40.010(2).

[7] The government relies on two unpublished Washington Court of Appeals decisions for its argument that Washington courts enjoy "considerable latitude" in the facts and circumstances to consider in determining whether manifest injustice exists. Dkt. # 20. These decisions lack persuasive force because they predate B.O.J. and their reasoning is in tension with the Washington Supreme Court's conclusion that not all of the statutorily enumerated purposes, including the purpose of providing necessary treatment, would always be relevant to the "threshold determination of whether a manifest injustice disposition is appropriate." B.O.J., 194 Wn.2d at 328; see State v. N.A.J., 174 Wn. App. 1073, 2013 WL 1960341, at *1 (May 13, 2013) (unpublished) (interpreting the Juvenile Justice Act to "call on juvenile courts to consider the overall purposes of the act when making a manifest injustice determination"); State v. Shurtz, 199 Wn. App. 1042, 2017 WL 2791344, at *3–4 (June 27, 2017) (unpublished) (interpreting the Juvenile Justice Act to permit a manifest injustice determination to rest on a juvenile's need for treatment).

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 9

1    Moreover, while <u>McAdory</u> did not address the difference between the juvenile and adult

2    sentencing systems directly, the Ninth Circuit's holding that none of the petitioner's prior

3    convictions—which included juvenile convictions—exposed him to sentencing ranges in excess

4    of a year, <u>McAdory</u>, 935 F.3d at 841, 844, strongly suggests that the Ninth Circuit considers the

5    juvenile sentencing system to be more like the newer adult system than the former adult system.

6    This Court will therefore follow the Ninth Circuit's lead. Here, the predicate offense at issue is

7    Mr. Smith's 2003 juvenile disposition for second degree burglary, which was subject to a

8    standard sentencing range of 0–30 days in detention under RCW 13.40.0357 (juvenile offender

9    sentencing standards). Dkts. # 1 at 10, # 9 at 7. This offense did not expose Mr. Smith to a

10   sentence range in excess of a year and was therefore not "punishable by imprisonment for a term

11   exceeding one year" for purposes of § 922(g)(1). Accordingly, Mr. Smith could not, as a legal

12   matter, have violated § 922(g)(1).

13   **B.    Procedural Default**

14        The parties agree that Mr. Smith's petition is procedurally defaulted because he did not

15   challenge the voluntariness or intelligence of his plea at sentencing or on direct appeal. <u>See</u>

16   Dkts. # 15 at 2, # 16 at 1; <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1988) ("[T]he

17   voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first

18   challenged on direct review."). A petitioner may overcome procedural default, however, by

19   demonstrating "cause" and "actual prejudice" *or* that he is "actually innocent." <u>Id.</u> at 615. One

20   way for a petitioner to "demonstrate actual innocence is to show in light of subsequent case law

21   that he cannot, as a legal matter, have committed the alleged crime." <u>Vosgien v. Persson</u>, 742

22   F.3d 1131, 1134 (9th Cir. 2014). Because Mr. Smith could not have violated § 922(g)(1) for the

23   reasons explained above, procedural default is excused and he may pursue his <u>Rehaif</u> claim. <u>See</u>

24   <u>Nair v. United States</u>, No. C19-1751 JLR, 2020 WL1515627, at *3 (W.D. Wash. March 30,

25   2020) (reaching the same conclusion for a petitioner in a factually similar case).

26

27

28

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 10

**C.** __Rehaif__ **Claim**

This Court finds another case from this District persuasive regarding the <u>Rehaif</u> claim analysis: <u>Nair v. United States</u>, No. C19-1751 JLR, 2020 WL1515627 (W.D. Wash. March 30, 2020). <u>Nair</u> summarized <u>Rehaif</u>'s significance for proving violations of 18 U.S.C. § 922(g)(1):

> In <u>Rehaif</u>, the Supreme Court overruled longstanding precedent from the Ninth Circuit—and every other circuit that had addressed the issue—concerning the scope of 18 U.S.C. § 922(g)(1) . . . . Before <u>Rehaif</u>, the Government could secure a felon-in-possession conviction by proving that the defendant knowingly possessed a firearm, even if the defendant did not know that he had been convicted of a felony—defined under the statute as a crime punishable by more than one year in prison—or was otherwise within a category of persons who cannot legally possess a firearm . . . . After the Supreme Court's decision in <u>Rehaif</u>, the Government must "prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."

<u>Nair</u>, 2020 WL1515627 at *3. Mr. Smith, like the petitioner in <u>Nair</u>, pleaded guilty to a violation of § 922(g)(1) before the Supreme Court decided <u>Rehaif</u>, which meant that "no one involved" in the "criminal proceedings correctly understood the elements of the offense," and no one could have informed a criminal defendant that a violation of § 922(g)(1) required proof that the defendant "knew he had been convicted of a crime punishable by more than one year at the time he possessed the ammunition." <u>Id.</u> at *4. Because Mr. Smith was not advised of the true nature of the charge, his guilty plea is "constitutionally invalid." <u>Bousley</u>, 523 U.S. at 619; see <u>Nair</u>, 2020 WL 1515627, at *4–5 (discussing <u>Bousley</u> and <u>Henderson v. Morgan</u>, 426 U.S. 637 (1976)). The government argues that Mr. Smith knew that he was prohibited from possessing firearms as the result of his juvenile conviction, Dkt. # 15, but *that* knowledge is not the critical issue. The crux of the matter is whether Mr. Smith knew he had been convicted of a crime "punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1); <u>Nair</u>, 2020 WL 1515627, at *5 n.7. Because Mr. Smith was actually innocent of the offense, and there is no evidence that Mr. Smith was informed of the § 922(g)(1) element concerning his knowledge that he had been convicted of a qualifying predicate offense, the Court concludes that the

constitutional violation at issue was not harmless,[8] and the Court grants Mr. Smith's § 2255 petition and vacates his conviction and sentence.

## IV.   CONCLUSION

Based on the foregoing analysis, the Court GRANTS both Mr. Smith's motion to amend his § 2255 petition (Dkt. # 13) and Mr. Smith's § 2255 petition to vacate, set aside, or correct a sentence (Dkt. # 1).[9] The Court DENIES the government's motion to dismiss the § 2255 petition (Dkt. # 9). In addition, the Court ORDERS that:

(1) The judgment imposed on May 11, 2018, in CR18-12-RSL (W.D. Wash.), Dkt. # 31, is hereby VACATED;

(2) The plea of guilty entered on January 30, 2018, in CR18-12-RSL (W.D. Wash.), Dkt. # 19, is hereby WITHDRAWN;

(3) The indictment in CR18-12-RSL (W.D. Wash.), Dkt. # 11, is DISMISSED WITH PREJUDICE.

---

[8] The government argues that Nair incorrectly applied the Henderson harmless error standard when it should have applied the standard from Brecht v. Abrahamson, 507 U.S. 619 (1993). Dkt. # 15 at 10–11. While the government is correct that the Ninth Circuit applies the Brecht standard to claims made in § 2255 petitions, the Brecht standard involves demonstrating "substantial and injurious effect or influence in determining *the jury's verdict*," United States v. Montalvo, 331 F.3d 1052, 1057–58 (9th Cir. 2003 (citing Brecht, 507 U.S. 619, 623 (1993)) (emphasis added), and Mr. Smith's claim concerns harmlessness in a guilty plea case, *not* in a jury verdict case. Because Henderson speaks to the harmless error standard for guilty plea cases, the Court finds Nair's reliance on Henderson persuasive. Additionally, the unpublished Ninth Circuit case the government cited in its attempt to undermine Nair is not binding, and in any event, the case only vaguely concludes that a "comparable standard" to Brecht "is applicable to errors in plea allocution." See Grantham v. Fakhoury, 472 F. App'x 443, 445 (9th Cir. 2012) (mem.); Ninth Cir. Rule 36-3 (permitting citation of unpublished decisions issued after January 1, 2007, but stating that such decisions are generally not precedential).

[9] As addressed above, the Court also GRANTS the government's request for an extension of time (Dkt. # 7).

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 12

1    DATED this 25th day of March, 2021.

2

3

4                                                    Robert S. Lasnik
                                                     United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 13